(C. D. 1995)

BRITISH WEST INDIES COMPANY *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 15, 1958)

*Siegel, Mandell & Davidson* (*Sidney Mandell* and *Joshua M. Davidson* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Dorothy C. Bennett* and *Richard E. FitzGibbon*, trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

RICHARDSON, Judge:    In this action, the plaintiff seeks a judgment directing the collector of customs at the port of Miami, Fla., to re-post three entries, allegedly liquidated on January 10, 1946, and January 28, 1946.

The merchandise covered by the entries was entered at the port of Miami, Fla., as sisal handbags, dutiable at 90 per centum under the provisions of paragraph 1529 of the Tariff Act of 1930.

Based on the contention that the posting of the bulletin notices of liquidation of the above entries was not proper, counsel for plaintiff by letter, dated July 11, 1950, requested the collector of customs to re-notice the liquidations. This the collector refused to do and so notified the requester by letter, dated August 4, 1950. Counsel for plaintiff then filed a protest on October 2, 1950, with the deputy collector of customs at Miami, in which the claim was made that "the original posting of the liquidations of these entries was illegal and void, in that it did not conform to the statutes and regulations governing same, . . . ."

At the trial of the case, counsel for the defendant interposed a motion to dismiss "on the ground that the protest is untimely as against the date of the liquidation of the entry." Decision on the motion was reserved.

The pertinent statutory and regulatory provisions in effect at the time of the liquidation are as follows:

Section 505 of the Tariff Act of 1930 (19 U. S. C. § 1505):

**Payment of duties.**

The consignee shall deposit with the collector, at the time of making entry, unless the merchandise is entered for warehouse or transportation, or under bond, the amount of duty estimated to be payable thereon. Upon receipt of the appraiser's report and of the various reports of landing, weight, gauge, or measurement the collector shall ascertain, fix, and liquidate the rate and amount of duties to be paid on such merchandise as provided by law and shall give notice of such liquidation in the form and manner prescribed by the Secretary of the Treasury, and collect any increased or additional duties due or refund any excess of duties deposited as determined on such liquidation.

Section 514 of the Tariff Act of 1930 (19 U. S. C. § 1514):

**Protest against collector's decisions.**

. . . all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury) . . . under any provision of the customs laws, and his liquidation or reliquidation of any entry . . . shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, . . . shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, . . . file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto, . . .

Customs Regulations of 1943:

### Section 16.2   Procedure; notice of liquidation.— . . .

.     .     .     .     .     .     .     .

(d) Upon the return of entries to the collector after the assessment of duties and internal-revenue taxes has been verified by the comptroller, formal entries shall be immediately scheduled on a bulletin notice of liquidation, customs Form 4333. . . . The bulletin notice of liquidation shall be posted as soon as possible in a conspicuous place in the customhouse for the information of importers and shall be dated with the date of posting. . . .

In support of its claim of improper posting, plaintiff offered in evidence three exhibits and introduced the testimony of four witnesses.

The exhibits consist of the clip board on which bulletin notices of liquidation are presently posted at Miami (plaintiff's exhibit 1), and copies of the letters, dated July 11, 1950, and August 4, 1950, *supra* (plaintiff's exhibits 2 and 3, respectively).

The witnesses were Arthur T. Brantley, a customs service employee for 32 years, who, at the time of the trial, was deputy collector of customs in charge at Miami and had been for 8 years; Mr. William G. Betz, customs entry officer, supervisor at the same port; Mr. Jacob L. Levine, a customs broker; and Mr. Leonard Tagliavia, customs entry clerk with Reedy Forwarding Co. of Miami.

The defendant offered no testimony or evidence, but counsel stated during the trial that it would have summoned as witnesses the Government employees, Mr. Brantley and Mr. Betz, had not plaintiff done so.

The interrogation of the witnesses and the information elicited thereby dealt with the method of preparing and posting bulletin notices of liquidation at Miami, Fla. The procedure currently followed was described, and it was shown that the same method of posting had been in effect for years and was used in 1946.

This is the method as detailed by the witnesses. After the merchandise has been appraised, the entries are sent for liquidation to Tampa, Fla., the headquarters port. The liquidated entries are forwarded to Baltimore, Md., for verification by the comptroller of customs. After verification, they are returned to Tampa, where they are stamped with the date of liquidation, and a bulletin notice of entries liquidated is prepared on customs Form 4333. The liquidated entries and the prepared bulletin notices are then sent to Miami. There, they are checked in the accounting division and then posted on the date indicated thereon, which is the same date appearing on the entries as the date of liquidation. The posting of the bulletin notices is accomplished by placing them on a board, denominated a clip board by the witnesses who were Government employees. At the present time, the practice is to attach this clip board to a bulletin board. However, in 1946, it was affixed to wire netting at a height

of 64 inches from the floor. Apparently, this netting was fastened to a counter near the door of the then entry room and formed a cage which extended 2 feet above the counter.

Plaintiff's exhibit 1 is offered to illustrate the type of clip board used and the method of placing the bulletin notices thereon. An examination of this exhibit discloses a board, approximately 9 by 14 inches in size, with two standards at the top. Two arms swing over and fit into the standards, thus forming a locking device. Attached to the lower end of the board is a springless clip or fastener that can be used to secure the notices at that end. The bulletin notices are placed on the board by the simple expedient of thrusting the standards through holes provided in the bulletin sheets for that purpose.

It was shown that the clip board could be and was at times removed from its hanging position and placed on a desk or counter in the entry room by importers or their representatives for the purpose of copying information therefrom.

It was also shown that it was not the practice to number the pages of the bulletin notices and that a month elapsed between the date of verification by the comptroller of customs at Baltimore, Md., and the stamped date of liquidation by the collector at Tampa.

We must decide whether notice of the liquidation of the involved entries given in the above manner constituted a valid notice.

Counsel for plaintiff prefaces the argument in its brief with the statement that "the practice regarding the posting of liquidated entries which prevailed at the port of Miami in 1946, and even today, was and is so contrary to statutes and regulations, so haphazard, without any degree of regularity or permanency as to mislead or confuse the importing public and to constitute an illegal and improper posting."

Section 505, *supra*, requires the collector to give notice of liquidation in the form and manner prescribed by the Secretary of the Treasury. This directive has been held by the courts to be mandatory and to give to the collector of customs no discretion either as to the form or manner of such notice. The regulations promulgated thereunder have the force and effect of law. *United States* v. *Astra Bentwood Furniture Co.*, 28 C. C. P. A. (Customs) 205, C. A. D. 147; *United States* v. *B. Holman, Inc.*, 29 C. C. P. A. (Customs) 3, C. A. D. 164; *Standard Oil Co. of Louisiana* v. *United States*, 33 C. C. P. A. (Customs) 152, C. A. D. 329.

Therefore, if the collector of customs at Miami failed to heed the congressional directive of section 505, *supra*, and give notice of the liquidation of the entries herein in the form and manner prescribed by the Secretary of the Treasury, as is contended by plaintiff, there has been no final legal liquidation of these entries.

The regulation in effect at the time of the liquidation required the collector to immediately schedule formal entries upon a bulletin notice, when they were returned to him after verification by the comptroller, and to post the bulletin notice in a conspicuous place in the customhouse.

We fail to see wherein the method of posting notices of liquidation shown to be in effect at the port of Miami at the time of these entries was misleading or contrary to this regulation. The notices were prepared on the form specified in the regulation, placed on a clip board, and hung at 64 inches from the floor in the entry room, where they were available to all interested persons. There is no contention made that the bulletins lacked any material information.

In its brief, counsel for plaintiff points to certain alleged elements which he contends merit condemnation and warrant a finding that the notices of liquidation were improperly given. Counsel assigns as fatal to the legality of the notices the fact that the customs office at Miami occupied only 1 per centum of the office space in the Federal building; that the bulletin notices were prepared on what he terms "loose leaf sheets which are easily lost, destroyed or removed"; that the bulletin sheets were not numbered; that the notices were posted in an impermanent manner; that entries were not immediately posted after verification; and that there was no sign to direct importers to the place where the bulletin notices could be found.

We are unable to discern a logical relationship between the size of the space allotted to the customs service in Miami and the validity or invalidity of the noticing of the liquidations herein, unless counsel desires to convey the idea that the allotted space (500 square feet) was inadequate for the proper posting and examination of notices. Whatever the reason for advancing the argument, we find no merit in its application to the issue before us.

We must admit that it is within the realm of possibility that the bulletin notices as posted could be lost, destroyed, or removed. Indeed, it is difficult to conceive of a practical method of posting notices for public examination that would prevent removal or destruction by an examinee bent on doing so. The board offered in evidence contained a locking device and a springless clip for securing the notices placed thereon. There is nothing in the record or the evidence to indicate that the bulletin sheets showing the liquidation of the entries in the instant case were lost, removed, or destroyed, thus preventing plaintiff from receiving timely notification.

Counsel's third objection is directed at the alleged failure of the collector to place numbers on the bulletin sheets. There is no requirement that the bulletin sheets be numbered and nothing to indicate in what manner, if any, this practice of not numbering the

posted bulletins was objectionable with relation to the noticing of the entries with which we are concerned.

Assigned as a further irregularity is the movability of the clip board containing the notices, an arrangement that would seem to be more beneficial than detrimental to the importers or their representatives. It appears to be obvious that copying information from a bulletin notice would be facilitated, if it could be removed from a hanging position and placed on a flat surface, and this is particularly true where the notice consists of more than one sheet. This feature of the posting is certainly not undesirable *per se*, and plaintiff has not shown how it affected the giving of notice of liquidation of the entries in the instant case.

The two remaining features which plaintiff argues should invalidate the posting merit some discussion. We have mentioned plaintiff's complaint that there was no sign to direct importers to the posted bulletins. At the time of the liquidation of these entries, section 16.2 (d), *supra*, did not provide for such a sign as part of the notification procedure. The regulation now in effect does. However, we cannot test the validity of a posting, in the light of the requirements of a regulation not in effect at the time. The witnesses called by plaintiff, who were engaged in the customs brokerage business in Miami, testified that they had never experienced any difficulty in locating the posted bulletins and could not recall ever having missed the liquidation of entries.

Finally, the complaint is made that entries were not posted immediately after verification; that, in the case at bar, a month elapsed between the two procedures. In reply, we reiterate what was said in this connection in the case of *Cavalier Shipping Company, Inc.* v. *United States*, 39 Cust. Ct. 219, C. D. 1932. We there stated that the provision in section 16.2 (d), *supra*, requiring that the bulletin notice should be posted "as soon as possible" is not a directive to post immediately or without intervention of time, but requires that the posting be done as quickly as it is practicable or feasible to do so.

We have viewed the notification procedure complained of not only from the standpoint of the requirements of the pertinent statutes and regulations, but in the light of the decisions cited in the brief filed on behalf of plaintiff as well. We see nothing in those cases that would compel or warrant a finding of noncompliance in the case before us. Each is distinguishable on its facts from the instant case. In *United States* v. *Astra Bentwood Furniture Co.*, *supra*, and *M. Dublin* v. *United States*, 2 Cust. Ct. 14, C. D. 77, the finding of noncompliance was based upon the failure of the collector to give the correct name of the importer. The bulletin notices were placed in a folder on a desk or table in the case of *Mary G. Hutchinson* v. *United States*, 18 Cust.

Ct. 64, C. D. 1046, and were, therefore, not "posted," as required by the regulations then in effect. In *M. M. Du Pouey* v. *United States*, 9 Cust. Ct. 86, C. D. 667, the bulletin notice contained incorrect information. The usual administrative practice of placing notices of liquidation in folders marked with the date of liquidation and putting such folders on a counter or table in a room in the customhouse was not followed in connection with the entry involved in *Lorraine Fiber Mills, Inc.* v. *United States*, 38 Cust. Ct. 94, C. D. 1848. Plaintiff insists that the situations in the *Lorraine* case and the instant case are analogous, but we fail to see the analogy. There is no contention made that the notices of liquidation of the entries in question were missing from the clip board at the time that they should have been there posted.

The bulletin notices in the case of *Standard Oil Co. of Louisiana, supra*, were posted in a small alcove some *few feet* above the floor. The clip board containing the notices was screwed to a bulletin board against the wall. To inspect the notice, the person making the inspection had to lean over a safe in a stooped position and attempt to check the entries by holding up the list with one hand while picking out the entries for which he was looking with the other. In addition, the particular notice was inserted between a superimposed partly filled top sheet and other accumulated notices, and no notation was placed on this partly filled top sheet to show that it was but one of a series of sheets containing a list of additional liquidations. The top sheet was signed by the collector, indicating, according to the usual practice, that it contained all the liquidations for that date. The importer's representative was thoroughly conversant with the system of posting usually followed at the particular port and was, therefore, aware of the significance to be attached to the collector's signature on the top sheet. For that reason, if for no other, he could have been reasonably misled by this unannounced departure from the established practice. The court found that the bulletin notice was not posted in a conspicuous place in the customhouse, but was posted in a manner that was obscure and misleading. In the instant case, the clip board was hung 64 inches from the floor near the entrance, and, because it could be removed for inspection, it was not necessary to attempt to copy information therefrom with one hand while using the other to hold up a sheet or sheets. We have not been shown that the importer could have been reasonably misled or confused by this manner of posting. In fact, counsel for plaintiff does not contend that the importer whose entries are before us was misled or confused.

Plaintiff has indulged in conjecture with regard to untoward events that conceivably could have occurred as a result of the noticing procedure followed which was in accordance with the law and regulations.

Not on the basis of what did happen, but on the basis of what could have happened to render the notice defective, we are asked to find the liquidation of these entries invalid. Conjecture will not support such a finding.

In view of the record and the evidence in this case, we are of the opinion that the notice of the liquidation herein was given in the form and manner required by law.

Plaintiff also urges that the current system of noticing liquidations at Miami is improper under the law and regulations. That question is not before us for decision. Whether or not proper notice has been given is a question to be determined in each case, *Astra Bentwood Furniture Co.*, *supra*, and must, of course, turn on the facts of the case. The protested liquidation occurred in 1946; therefore, the only system of noticing liquidations before the court for consideration is the system in effect at that time.

The present protest was not filed until 1950, a period of some *4 years* after the liquidation in question. Since the plaintiff had proper and valid notice, its protest filed long after the statutory period of 60 days is untimely.

The Government's motion to dismiss for untimeliness is granted.