(C. D. 926)

STANDARD OIL CO. OF LOUISIANA *v.* UNITED STATES

United States Customs Court, Third Division

(Decided May 31, 1945)

*Sharretts & Hillis* (*Edward P. Sharretts* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Richard H. Welsh,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: The product at issue in this case consists of certain waste gases, the residue of the manufacture of imported crude petroleum stock into various refined products such as gasoline, fuel oil, and other articles for exportation from the United States. The waste refinery gases were unavoidably produced and were disposed of through use as fuel under the boilers in the refinery. The product was assessed for duty at 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as nonenumerated manufactured articles, and the entry was liquidated on December 11, 1941, except warehouse withdrawal entry numbered 73–B, which was liquidated November 27, 1941. The protest was received by the collector on August 21, 1942, and reads as follows:

Protest is hereby made against your decision, as contained in your letter dated June 25, 1942, addressed to the Standard Oil Company of Louisiana, refusing to liquidate in accordance with the law and regulations, and to post such liquidation

in accordance with the law and regulations, certain Manufacturing Warehouse Withdrawal for Consumption entries, covering withdrawals of petroleum gases classifiable as waste, withdrawn from protestant's Class 6 Warehouse at Baton Rouge, obtained incident to the manufacture of petroleum products in the said warehouse from gas oil imported by protestant under Manufacturing Warehouse entries, as shown * * *.

The letter referred to in the protest addressed to the plaintiff by the collector at New Orleans, states:

Reference is made to your application, dated May 21, 1942, in which it is claimed that the liquidations of certain Warehouse Withdrawals for Consumption should be voided for the reason that they were not in conformity with the decision rendered by the Customs Court in C. D. 471.

The application was submitted to the Bureau, requesting that permission be granted this office to cancel the liquidations involved and to liquidate the withdrawals on the basis of the Court's decision, namely, 10% ad valorem as waste, under Paragraph 1555 of the Tariff Act of 1930, and, where applicable, at the rate provided in the Canadian and United Kingdom Trade Agreements.

In letter of the 22nd instant, the Bureau stated that it was without authority to authorize another liquidation of the withdrawals referred to, and the request of this office for permission to cancel the original liquidations was denied.

Therefore, in view of the Bureau's decision, this office refuses to disturb the liquidations involved.

\*    \*    \*    \*    \*    \*    \*

At the trial counsel for the plaintiff contended that the liquidations of the collector in these entries are invalid, because they were not legally posted in accordance with the law and regulations, and the notice was not in a conspicuous place in the customhouse as provided by law. Three witnesses testified for the plaintiff, to wit, the plaintiff's customhouse broker, Richard G. Woolfolk; the deputy collector of customs in charge at Baton Rouge, La., a subport of New Orleans, Herbert V. Kelley; and the deputy collector in charge of the liquidating division at the port of New Orleans, H. A. Blancq.

Counsel for the Government at the opening of the trial moved to dismiss the protest upon the ground that it was filed more than 60 days after liquidation and that as such liquidations had become final and conclusive upon all parties under the provisions of section 514, Tariff Act of 1930, this court was without jurisdiction to hear and determine the cause.

Counsel for the plaintiff admitted that under the principles announced by the Court of Customs and Patent Appeals in *United States* v. *Astra Bentwood Furniture Co.*, 28 C. C. P. A. 205, C. A. D. 147, and *United States* v. *Holman*, 29 C. C. P. A. 3, C. A. D. 164, this court would not have jurisdiction to hear and decide the question, and that it should be dismissed. However, counsel for the plaintiff petitioned the court for permission to establish "that there were several irregularities in connection with the supposed liquidation" and that the court decide whether or not there was a valid liquidation even though the protest is dismissed. The motion to dismiss was taken

under advisement by the trial judge and the plaintiff was permitted to submit proof to establish the irregularities claimed to constitute an illegal liquidation in each of the withdrawal entries involved herein, except withdrawal entry numbered 73–B. As to that entry the protest was abandoned.

In the case of *Standard Oil Co. of Louisiana* v. *United States*, 6 Cust. Ct. 237, C. D. 471, this court held that refinery gases such as are at issue in the withdrawals in question were, in the tariff sense, a waste, having neither the character of the original material nor of the products produced therefrom, and, as such, were properly dutiable at 10 per centum ad valorem under paragraph 1555. The withdrawal entries now before us were withheld from liquidation pending that decision. The evidence establishes that the large majority of the entries so withheld were liquidated in accordance with the decision in that case but the withdrawal entries before us were inadvertently liquidated dutiable as entered at 20 per centum ad valorem under paragraph 1558. There is no doubt that an error was made by the customs officials. The New Orleans officials were confident that the withdrawals were with the surveyor of the port but upon inquiry by the customs broker they were not found. Although the broker had carefully watched the bulletin board upon which notice of liquidations appeared, he had failed to find that any notice had been published concerning these entries. Finally, when it was discovered that the surveyor was not holding the entries, the broker made a careful search of the published notices and found that there had been a posting. The deputy collector at Baton Rouge had posted notice comprising three sheets of entries one on top of the other. The top sheet pertained solely to refunds and at the bottom of the sheet, although said sheet was not filled, the deputy collector had signed his name. Underneath the top sheet appeared two additional sheets, the second of such sheets also being signed by the deputy collector. Upon these sheets appeared the published report that the withdrawal entries in question had been liquidated as entered. The deputy collector testified that the posting was different from the usual posting because "we had never had as many entries liquidated on one day before, but it was different only in that respect," and the signature at the bottom of the sheets was entirely unnecessary to make them official, although it was the practice to sign them, and that the only thing unusual about it was on account of the number of liquidations necessitating the filing of more than one sheet.

The liquidator at New Orleans testified that the entries were liquidated upon the basis of the advisory classification at 20 per centum ad valorem under paragraph 1558; that at the same time these entries were liquidated other entries covering the same class of goods were liquidated on the basis of 10 per centum ad valorem as waste under

paragraph 1555 in accordance with this court's decision in C. D. 471, *supra*, and he gave as his explanation that the entries where protests had been filed, were liquidated in accordance with the contention in the protests, and those entries not covered by protest were liquidated according to the advisory classification at 20 per centum.

The documentary evidence admitted at the trial consists of a certified copy of a letter which the collector of customs addressed to the Commissioner of Customs explaining the situation and requesting a ruling. This letter was marked as exhibit 1. The Commissioner's reply to the foregoing, refusing to sanction a reliquidation of the entries, was marked "Exhibit 2." A copy of the letter written by the plaintiff to the collector was admitted as exhibit 3, but merely to complete the file of correspondence, and not as to its contents. Exhibit 4 is a copy of the "bulletin notice of entries liquidated" at Baton Rouge on December 11, 1941, covering 35 reliquidated entries, granting refunds of duties taken upon plaintiff's warehouse withdrawals. This sheet was not completely filled. It was signed at the bottom by the deputy collector, and was not numbered. Collective exhibit 5 consists of the two additional sheets which were upon the bulletin board underneath exhibit 4. The first sheet is marked "Sheet #1" and the second "Sheet #2." Sheet 1 is completely filled with entries of plaintiff liquidated on December 11, 1941, some liquidated as entered, others with an increase, and others with refund; and sheet 2 contains three additional entries liquidated as entered, followed by the signature of the deputy collector. The entries before us are included in the published liquidations noted "As entered." Exhibit 6 consists of a large sheet containing data of the number of withdrawals and the amount to be refunded, including the entries in question. The evidence shows that the plaintiff furnished the collector with this list at the time request was made that the liquidations be withheld pending decision upon the question of whether or not these gases were dutiable as waste.

From a careful consideration of the record and the evidence before us, we find that all of these entries were advisorily classified at 20 per centum ad valorem under paragraph 1558 on or before February 3, 1941, which was before the promulgation of our decision in C. D. 471, *supra*. There had been no liquidations of these entries until December 11, 1941. A consideration of the regulations governing liquidation and posting of notice fails to disclose any irregularity in filing more than one sheet containing liquidations, nor is it necessary for the collector's signature to appear upon the notice. The customhouse broker's erroneous conclusion that liquidations always appeared on the sheet on which the collector's signature was affixed at the bottom, resulting in his neglect to ascertain whether or not there were more liquidations upon that day than appeared upon the front sheet, in

our opinion, is not sufficient to sustain the contention that such posting was illegal. The bulletin notice bore the date of liquidation, the entries were stamped liquidated on the same date, and all of the other identifying data was contained on the bulletin notice in accordance with the regulations.

Article 818, Customs Regulations of 1937, as amended by T. D. 49487 and T. D. 49658, provides in respect to posting of notice of liquidation as follows:

(j) Upon the return of entries to the collector after the assessment of duties and internal-revenue taxes has been verified by the comptroller, formal entries shall be immediately scheduled on a bulletin notice of liquidation, customs Form 4333. * * * The bulletin notice of liquidation shall be posted as soon as possible in a conspicuous place in the customhouse for the information of importers and shall be dated with the date of posting. The entries for which the bulletin notice of liquidation has been posted shall be stamped "liquidated" and with the date of liquidation which shall be the same as the date of the bulletin notice of liquidation. Such stamping is the legal evidence of liquidation.

(k) Warehouse withdrawals for consumption covering manipulated merchandise withdrawn from class 8 warehouses and byproducts and wastes withdrawn from class 6 warehouses shall be liquidated and the liquidations posted.

A careful consideration of the foregoing regulations discloses nothing irregular in the notices of liquidations posted on December 11, 1941. Nor do we find any evidence to sustain the claim that the bulletin notices were not posted in a conspicuous place in the customhouse.

The liquidations may not have been in conformity with the provisions of article 828 (i) of the Customs Regulations of 1937, as amended, providing that the principles announced in decisions of the courts shall be applied to unliquidated entries in which the same issue is involved, but the plaintiff had his remedy by protest against the collector's action in so· liquidating, and failed to exercise it. We are of the opinion that the liquidations were legally made and were posted in accordance with the regulations under section 514, and upon the conclusion of 60 days thereafter became final and conclusive upon all parties, including the United States and any officer thereof since no protest was filed within such time. Clearly a protest filed against the collector's refusal to act is a nullity particularly in view of the prohibition in said section.

For the reasons stated, the Government's motion to dismiss upon the ground of untimeliness is granted, and judgment will be entered dismissing the protest.