(C.D. 2364)

## C. O. MASON, INC. *v*. UNITED STATES

United States Customs Court, Third Division

(Decided October 8, 1962)

*Tomas I. Nido* and *Harold A. Segall* (*Thomas I. Nido* of counsel) for the plaintiff.

*Joseph D. Guilfoyle,* Acting Assistant Attorney General (*Murray Sklaroff*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges; DONLON, J., dissenting

RICHARDSON, Judge: The merchandise that is the subject of the instant protest consists of coffee which was imported at San Juan, P.R. The importations are covered by some 29 separate entries. The protest is before this court on a motion made by defendant's counsel at the trial attacking the protest and seeking its dismissal under 19 U.S.C.A., section 1514 (§ 514, Tariff Act of 1930), on the ground of untimeliness.

Section 1514, *supra*, reads:

Except as provided in subdivision (b) of section 1516 of this title (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any

entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (including the United States and any officer thereof), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision, or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation. (June 17, 1930, ch. 497, title IV, § 514, 46 Stat. 734.)

There appears to be no dispute concerning the essential facts which prompted the Government's attorney to make the motion to dismiss. It appears that the involved entries were liquidated at various times between June 1957 and September 1959. The instant protest, which is addressed to these liquidations, was filed with the collector on July 21, 1960. It reads in part:

Protest is hereby made against your liquidation assessing duty on entries listed below, subject of this communication. The reasons for the objection under Section 514 of the Tariff Act of 1930, as amended, are as follows:

The imported merchandise covered by the below-listed entries was improperly classified by you, in our opinion, as follows under regulations existent at that time.

1. Namely this covers ground coffee and instant coffee received from the Maxwell House and Sanka Divisions of the General Foods Corporation, on which duty was paid in the amount of 36 cents per pound on the regular ground coffee, and 30 cents per pound on the raw coffee used in preparation of the instant coffee.

2. Whereas, it is our belief that coffee during the covering period should have been charged duty in the amount of 18 cents per pound on the ground coffee, and 15 cents per pound on the raw coffee used in the preparation of the instant coffee.

This protest is based on Custom Court Ruling basically made under date of 15 September 1959, which protest was made final after a re-hearing under date of 19 February 1960.

On the basis of the above, request is hereby respectfully made for a reliquidation of the enclosed series of entries.

Concerning the merits of the controversy, the Government's attorney made the following statement (R. 2–3):

MR. SKLAROFF: We can concede on the merits plaintiff has a case, in that the merchandise in issue is the same in all material respects to C.D. 2115, and if he gets over the hurdle of timeliness, we concede.

JUDGE LAWRENCE: That in the opinion of the attorney for the defendant, the plaintiff is entitled to judgment provided the protest is timely?

Mr. Sklaroff: I have been so informed by the Chief Liquidator here, and the Customs officials here, with respect to all the other cases.

Admittedly, the instant protest was filed well after the expiration of 60 days subsequent to the liquidations here involved. The defendant contends that, by reason thereof, this court lacks jurisdiction over the protest. On the other hand, the plaintiff maintains that the liquidations of the involved entries were void and, as such, are not binding and conclusive. The question which remains for determination is whether the untimely filing of the protest is fatal to plaintiff's right to relief. In this connection, we deem it pertinent to refer to our decision in *Pan American Standard Brands, Inc., et al.* v. *United States*, 43 Cust. Ct. 122, C.D. 2115, which is cited in the briefs of counsel and which was also alluded to in the protest and mentioned on the oral argument of the motion.

In *Pan American Standard Brands, Inc., et al.* v. *United States, supra,* the plaintiffs entered importations of roasted coffee at the port of San Juan, P.R., on April 22, 1957, and May 1, 1957. By an act of Congress (19 U.S.C.A., § 1319) the Legislature of Puerto Rico was authorized to levy customs duties on coffee imported into Puerto Rico. And, by virtue of this authority, the Legislature of Puerto Rico enacted a statute (Act No. 77 of 1931) which, as amended in 1934 and 1935, resulted in a duty levy of 15 cents a pound and 18 cents a pound, respectively, on imports of raw coffee and roasted or ground coffee. Then, on June 21, 1955, Act No. 77 was again amended by the Legislature of Puerto Rico by Act No. 95 (13 L.P.R.A., § 2201, supp.), which reads in part as follows:

§ 2201. Amount of duty; definition

As soon as this Act takes effect all coffee introduced into Puerto Rico shall pay a duty of fifteen (15) cents a pound for raw coffee and eighteen (18) cents a pound if roasted or ground coffee, said duty to be collected by the Federal customhouse Service established in Puerto Rico, under such regulations as it may promulgate therefor; *Provided, That when market conditions may warrant it and for the purpose of protecting the consumer or the coffee industry, the Secretary of Agriculture and Commerce is hereby authorized, until June 30, 1958, to increase or reduce the duty levied by sections 2201–2205 of this title, after a public hearing to that effect. The reduction or increase determined by the Secretary of Agriculture and Commerce shall be subject to the approval of the Governor. Every resolution increasing or reducing the duty levied shall be accompanied by a statement concerning the consideration borne in mind for making the change; * * * .* [Italics supplied.]

Thereafter, and pursuant to this statute, the Puerto Rican Secretary of Agriculture and Commerce issued, and the Governor of Puerto Rico approved, a resolution, effective April 18, 1957, declaring an increase in the rates of duty on raw coffee and on roasted or ground coffee imported for use, consumption, and sale in Puerto Rico, from 15 cents a pound and 18 cents a pound, respectively, to 30 cents a

pound and 36 cents a pound, respectively. Duties were assessed against plaintiffs' importations and the entries were liquidated by the collector pursuant to this resolution of the Puerto Rican Secretary of Agriculture and Commerce.

We sustained the plaintiffs' protests in *Pan American Standard Brands, Inc., et al.* v. *United States, supra,* and held unconstitutional as an unlawful delegation of legislative power the provision of Act No. 95, *supra,* which empowered the Secretary of Agriculture and Commerce of Puerto Rico to modify, without any guidelines or standards, the rates of duty levied by that statute. We also held invalid the aforesaid resolution of the Puerto Rican Secretary of Agriculture and Commerce, issued under said statutory provision, and the duty assessments made pursuant to said resolution. No appeal was taken by the Government in the case, in consequence of which, our decision became the law of the case.

In the *Pan American Standard Brands, Inc., et al.,* case, the question at issue here, the timeliness of the protest, was not before us. However, the effect of our decision was to declare the duty assessments and liquidations under the entries covered by the protests there involved, void *ab initio.* A decision against the constitutionality of a statute makes the statute entirely null and inoperative, and the invalidity dates from the time of enactment. *Norten* v. *Shelby County,* 118 U.S. 425, 30 L. Ed. 178. In some situations, where a statute is declared to be unconstitutional, there may be questions of vested rights and of public policy which cannot be erased by the new judicial determination, but no such factors have been presented in this case and the plaintiff should be granted relief. Counsel for the defendant concedes that, on the merits, the plaintiff's protest brings it within the ruling in C.D. 2115, and we are of the opinion that the same conclusion should be reached on the plaintiff's claim.

For purposes of ascertaining the time within which a protest against a collector's liquidation must be filed pursuant to section 1514, *supra,* a distinction has to be drawn between a liquidation which is legal, although erroneous and voidable as such, and one which is illegal and absolutely void. See *Stubbs* v. *United States,* 7 Ct. Cust. Appls. 399, 403, T.D. 36967; *United States* v. *Astra Bentwood Furniture Co.,* 28 C.C.P.A. (Customs) 205, C.A.D. 147. A liquidation of the first type is a valid liquidation and stands as such unless and until it is set aside in subsequent proceedings A liquidation of the second variety is a nullity and cannot support subsequent proceedings based thereon. The language of the protest statute concerns itself with the first type of liquidation. It is addressed to a review of the merits of the collector's decision itself, rather than to the jurisdiction of the collector to render the particular decision. The jurisdictional question is a factor which characterizes the second type of liquidation. It is

axiomatic that, unless and until the collector has satisfied all of the jurisdictional requisites attendant upon the liquidating process, there is no liquidation against which a protest under section 1514, *supra*, would lie. With respect to protests taken against such non-existent liquidations, it must necessarily be concluded that the protests have been lodged before liquidation and are, as such, premature within the meaning of the statute.

In a number of protest cases, the courts have either expressly or impliedly acknowledged and applied this distinction between a voidable (legal) liquidation and a void (illegal) liquidation from the standpoint of the question of timeliness of the filing of the protest. *Olavarria & Co., Inc.* v. *United States*, 40 Cust. Ct. 377, C.D. 2008, affirmed 47 C.C.P.A. (Customs) 65, C.A.D. 729; *United States* v. *Judson Sheldon Division, National Carloading Corp.*, 42 C.C.P.A. (Customs) 202, C.A.D. 594, reversing 32 Cust. Ct. 68, C.D. 1581; *Joseph Ullmann Brokerage Corp.* v. *United States*, 29 Cust. Ct. 254, C.D. 1478, affirmed 42 C.C.P.A. (Custom) 6, C.A.D. 560; *Standard Oil Co. of Louisiana* v. *United States*, 33 C.C.P.A. (Customs) 152, C.A.D. 329, affirming on other grounds 14 Cust. Ct. 146, C.D. 926; *United States* v. *B. Holman, Inc.*, 29 C.C.P.A. (Customs) 3, C.A.D. 164, reversing 4 Cust. Ct. 466, Abstract 43635; *United States* v. *Astra Bentwood Furniture Co.*, 28 C.C.P.A. (Customs) 205, C.A.D. 147, reversing 4 Cust. Ct. 19, C.D. 273. In all of these cases, the courts first ascertained under the evidence presented whether the liquidations against which the protests were filed were legal or whether such liquidations were illegal. In those cases where the courts concluded that the liquidations were legal, the protests were dismissed as being untimely (too late). With respect to those cases where the courts concluded that the liquidations were illegal, the protests were also dismissed as being untimely, but only because they were prematurely filed.

In our opinion, the same distinction as made in the cited cases between legal and illegal liquidations governs the disposition of the instant protest vis-a-vis *Pan American Standard Brands, Inc.* v. *United States, supra.*

It is true that the subject matter of the cited cases evolved around the propriety of the posting of liquidation notices, while the subject matter of the involved protest concerns itself with the invalidity of the statute and executive resolution supporting the collector's duty assessments on the involved entries. However, we recognize in this difference of fact patterns no distinction in principle. In either case, the involved facts constitute integral parts of the liquidating process. As was stated by the Court of Customs and Patent Appeals in *United States* v. *B. Holman, Inc., supra*, at page 14, "all decisions of the collector involved in the ascertaining and fixing of the rate and amount

of duties chargeable against imported merchandise entered for consumption are merged in and become a part of a legal liquidation, and it is a legal liquidation only, so far as the issues here are concerned, against which a protest will lie."

The principle of law followed in the cited cases has not heretofore been and should not be limited in application to the posting of liquidation notice cases. In *Nozaki Bros., Inc.*, and *Frank P. Dow Co., Inc.* v. *United States*, 41 Cust. Ct. 245, C.D. 2048, as in the case at bar, the Government also sought to have the protest dismissed on the ground that it was filed too late. The collector's liquidation in that case was held to be void, and the protest against such liquidation was dismissed as being premature where the liquidation was made in disregard of the mandate of the court. Apart from the question of timeliness in the filing of a protest against a collector's liquidation, our appellate court held, in *United States* v. *William Heyer*, 31 C.C.P.A. (Customs) 111, C.A.D. 259, that the collector's duty assessment was illegal and void where it was based upon an illegal and void appraisement. And the holding in *United States* v. *William Heyer, supra*, was followed by the Customs Court in *Bluefries New York, Inc.* v. *United States*, 40 Cust. Ct. 515, Abstract 61804, and *Bluefries New York, Inc.* v. *United States*, 39 Cust. Ct. 79, C.D. 1909, wherein protests against liquidations supported by such illegal and void appraisements were dismissed as being premature upon the authority of that case. Inasmuch as it has been held that liquidations based upon void appraisements are void and cannot support protests addressed to them, there appears to be no sound reason why liquidations based upon void statutes and executive resolutions, as in the instant case, should be regarded any differently. We have examined the authorities cited in the defendant's brief, and find nothing in them which suggests that such liquidations should be regarded as being anything but void and incapable of supporting the protests.

For the reasons which we have stated in our opinion in *Pan American Standard Brands, Inc.* v. *United States, supra*, we conclude that the collector's assessment of duties against and the liquidation of the entries covered by the protest at bar are illegal and void. Consequently, it is the collector's duty to assess duties against the involved entries and liquidate the same in the manner provided by law so as to give the plaintiff an opportunity to duly protest against such liquidations if it be so advised. Therefore, for the reasons stated herein, the protest is dismissed by reason of it having been prematurely filed.

Judgment will be entered accordingly.

### DISSENTING OPINION

Donlon, Judge: I regret that I am constrained to dissent from the decision of my colleagues and the action that is taken in their judgment. In my view, such decision and judgment are inconsistent

with the recent decision and judgment in *Pan American Standard Brands, Inc., et al.* v. *United States*, 43 Cust. Ct. 122, C.D. 2115.

That was our unanimous decision and judgment. We sustained protests seeking to recover duties that had been exacted on imported coffee at the port of San Juan, P.R. Our decision held that Act No. 95 of the Legislature of Puerto Rico (13 L.P.R.A., section 2201, supp.) was an unlawful delegation of legislative power. Finding that the protests had been timely filed, judgment was entered directing the collector to reliquidate the entries and make refund of duties that had been unlawfully exacted.

We did not hold that those protests were premature. In a situation on all fours as to legality of the liquidation, and differing only as to timeliness of protest, we did not hold, as the majority here holds, that the liquidation was void and no right of protest followed. Our decision was that the liquidation could be protested, and that it had been timely protested.

The difference here is that plaintiff slept on his statutory right to protest.

Either we were wrong in the case of *Pan American Standard Brands, Inc., supra,* or the majority is wrong here. I joined in that decision and judgment, and I have not changed my opinion. I see no basis for a different decision and judgment here. Liquidations under identical circumstances are not both subject to protest and not subject to protest.

The right to protest an unlawful liquidation is governed by time limitations that are imposed by Congress. Those who seek to sue the United States must do so within the terms of whatever congressional permission is given them to do so. If plaintiff did not file a timely protest, as the statute requires, plaintiff has no right to come before us late demanding a reliquidation, and we should neither direct reliquidation nor entertain the notion that there is a time in the future for timely protest and refund.

Defendant correctly argues that this protest should be dismissed on the ground that it was filed too late. Such a decision is consistent with our decision in *Pan American Standard Brands, Inc., supra.*