(C. D. 1046)

MARY G. HUTCHINSON *v.* UNITED STATES

United States Customs Court, First Division

(Decided February 21, 1947)

*Harper & Harper* (*George R. Tuttle* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before OLIVER, COLE, and MOLLISON, Judges

MOLLISON, Judge: As originally drawn, this protest was directed against the action of the collector of customs at the port of San Diego assessing duty on the involved merchandise at the rate of 35 per centum ad valorem under paragraph 1531 of the Tariff Act of 1930 (19 U. S. C. A. § 1531), claiming the same to be properly dutiable at the rate of 15 per centum ad valorem under the provisions of paragraph 1530 (b) (4). By timely amendment of the protest a claim in the following form was made:

The entries referred to herein were not "liquidated" as required by section 505, Tariff Act of 1930, on the dates shown thereon, namely, April 7, 1938, July 15, 1938, and August 11, 1938.

Consequently liquidation should now be directed by the Court or it should be held that this protest is timely, having been filed within sixty days after notice was received of liquidation.

When the case was called for trial, counsel for the defendant moved that the protest be dismissed "upon the ground that it is untimely and does not comply with Section 514 of the Tariff Act, in that it was not filed within 60 days after liquidation."

The protest indicates on its face that it was filed with the collector of customs at the port of San Diego on April 1, 1940. Examination of the 16 entries specified in the protest shows that they bear stamps indicating that liquidation took place on one of three different days, namely, April 7, July 15, or August 11, 1938, which would, of course, make the date of the filing of the protest more than 60 days after the alleged dates of liquidation.

Evidence was offered bearing upon the claim made by amendment of the protest and upon the motion made by counsel for the defendant, and decision thereon was reserved by the judge presiding on circuit for action by this division of the court, time being allowed for the filing of briefs.

No evidence was offered in connection with the classification claim made in the protest as originally filed, it being apparent that it was tacitly understood that if the decision on the motion was adverse to the defendant and the protest held to have been timely filed, it would be restored to the calendar for trial on the merits.

The basis for the claim made by amendment of the protest is the plaintiff's contention that the collector failed to post notice of liquidation of each of the involved entries in a conspicuous place in the customhouse as required by article 818 (i) of the Customs Regulations of 1937, as amended, in force at the time the entries in question were being processed in the collector's office. The plaintiff alternatively contends that if it be held that the notice of liquidation was properly posted, it was not posted in the correct name. In either event, it is contended that there was no valid liquidation. As a further alternative, it is contended that if the liquidations be held to be valid, even though improperly posted and/or not posted in the correct name, the protest should be held to be timely on the ground that it was filed within 60 days of actual notice.

We think it unnecessary to pass upon the alternative contentions made by the plaintiff, for we are satisfied that liquidation of the entries in question was not completed so as to commence the running of the statutory time within which protest might be filed for the reason that the customs regulations promulgated by the Secretary of the Treasury under express authority of section 505 of the Tariff Act of 1930 with respect to notice of liquidation were not complied with.

The plaintiff on the witness stand described the physical situation with respect to notice of liquidations at the customhouse at the subport of San Ysidro (through which the merchandise in question was entered) during 1938, when the alleged liquidations were made, as follows: The officers of the customs occupied the left side of the customhouse, consisting of four rooms. In one of these rooms was a counter, and on the east corner of the counter a folder was placed, and the witness stated that interested parties "were at liberty to open the folder and see our liquidations and check them."

The witness also testified that she had been a customhouse broker in San Ysidro since 1930 and was familiar with the method used at that port to indicate liquidation of entries.

The defendant urges that the foregoing does not establish failure on the collector's part to comply with the law and regulations, but, as

a matter of fact and law, establishes neglect and laches on the plaintiff's part, since by her own admissions she knew the method of posting liquidations at San Ysidro and had actually previously checked liquidations posted in a similar manner to the ones involved in the instant case.

We are not impressed, however, by any argument that the plaintiff might have had or could have had actual notice of liquidations in this case at the time they are claimed by the defendant to have been made. In *United States* v. *Astra Bentwood Furniture Co.*, 28 C. C. P. A. (Customs) 205, C. A. D. 147, it was held that the statutory provision in section 505, *supra*, mandatorily requires collectors of customs to give notice of liquidations "in the form and manner prescribed by the Secretary of the Treasury," and that failure to comply with the requirements of customs regulations issued by the Secretary under such authority, which regulations have the force and effect of law, leaves the liquidation incomplete and, among other things, prevents the commencement of the period of time within which protest may be filed under section 514. The sole question is, therefore, whether notice of the liquidations was given in each case by the collector in the form and manner prescribed by the Secretary of the Treasury.

Article 818 (*i*) of the Customs Regulations of 1937, as amended, provided in part as follows:

Upon the return of entries to the collector after the assessment of duties and internal-revenue taxes has been verified by the comptroller, formal entries shall be immediately scheduled on a bulletin notice of liquidation, customs Form 4333 * * *. The bulletin notice of liquidation shall be posted as soon as possible in a conspicuous place in the customhouse for the information of importers and shall be dated with the date of posting. * * *

and, indeed, the identical language is used in the regulations presently in effect. (Sec. 16.2 (*d*), Customs Regulations, 1943 edition.)

The question immediately presented for determination therefore is: Was notice of liquidation given "in the form and manner prescribed by the Secretary of the Treasury"—i. e., by posting the bulletin notices of liquidation as soon as possible in a conspicuous place in the customhouse? The verb "to post" has a well-defined meaning which carries with it the idea or suggestion of affixing a notice to an object in a vertical manner at such height and in such place that the eyes of the public will readily see it. Thus, Webster's New International Dictionary (1945) defines it as follows:

To affix to a post (as, esp. formerly, before a sheriff's office or in some other public place), wall, or other usual place for public notices * * *

and Funk & Wagnalls New Standard Dictionary (1942) gives a similar definition:

To bring to the notice or attention of the public by affixing to a post or putting up in some public place * . * *

and the foregoing definitions accord with the meaning given to the term in law. (See 49 C. J. 1120, sec. 2, and 33 Words and Phrases 120.)

It is obvious that the act of placing a folder containing the bulletin notice on a counter does not meet the requirement that such notices "shall be posted * * * in a conspicuous place in the customhouse," and it follows that there was in the case of the notices here in question no such posting as would be considered to have completed the liquidations and permitted the running of the statutory time within which protest might be filed.

On the authority of the *Astra Bentwood Furniture Co.* case, *supra*, and of the case of *United States* v. *B. Holman, Inc.*, 29 C. C. P. A. 3, C. A. D. 164, we hold that as the collector has not liquidated the involved entries as required by law, the involved protest is untimely, because prematurely filed, and, accordingly is for that reason dismissed.

Judgment will issue accordingly.