(C. D. 2008)

OLAVARRIA & Co., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 17, 1958)

*Barnes, Richardson & Colburn* (*Edward N. Glad* of counsel) for the plaintiff.
*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector, Dorothy C. Bennett,* and *Richard E. FitzGibbon,* trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

RICHARDSON, Judge: This action embraces two protests, 265790–K and 265791–K, which were consolidated for trial. Hearings were conducted in New York City and West Palm Beach, Fla. The merchandise involved is described by plaintiff as sugar sirup, artificially flavored.

The protests challenge the validity of the liquidations of the entries covering the imported merchandise and the correctness of the collector's classification. Plaintiff contends that the liquidations were null and void, in that notices of the liquidations were not given, as provided in 19 U. S. C., section 1505 (Tariff Act of 1930, section 505) and regulations issued thereunder. Plaintiff further contends that the collector erroneously assessed the merchandise involved in protest 265790–K for duty at various rates under paragraph 501 and the merchandise covered by protest 265791–K at 16 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as modified by the Cuban Trade Agreement, as nonenumerated manufactured articles. It is claimed that the merchandise should have been classified as sugar sirup, dutiable at the appropriate rate under paragraph 502 of the Tariff Act of 1930, as amended by T. D. 50541 or T. D. 49753. This claim is based on the assertion that the merchandise herein is the same in all material respects as that contained in the case of United States v. Olavarria & Co., Inc., 37 C. C. P. A. (Customs) 40, C. A. D. 417, decided by the appellate court on November 7, 1949. In that case, litigated by plaintiff herein, the court held that the merchandise described as artificially flavored sugar was properly classifiable as sugar sirup under paragraph 502, Tariff Act of 1930, as modified by the supplemental trade agreement with Cuba, and dutiable under the eo nomine provision for sugar under that paragraph.

The merchandise was entered at West Palm Beach, Fla., in the years 1943 and 1944. The entries covering the same were allegedly liquidated at some time during the years 1945 and 1946.

The protests herein were filed April 4, 1955. There are no official records available to establish the actual dates of liquidation or to confirm the description or classification of the merchandise. Counsel for defendant explained that the documents relating to the importations were destroyed in accordance with congressional authorization. (See instructions contained in General Services Administration Records Control Schedule, Bureau of Customs Comprehensive Schedule No. 2, part VI, dealing with records of the collector of customs, approved in House Report 2605, 83d Congress, Second Session, August 3, 1954. This schedule permits, inter alia, closed

entry files, the liquidation of which has become final, to be destroyed 4 years after final liquidation, unless certain conditions exist which are not present here.)

The only documents in evidence pertaining to the importations are those offered and received at the trial as plaintiff's collective exhibits 1 and 2. These exhibits consist of copies of consumption entries, receipts for supplemental duties paid on three of the involved entries, and a notice of refund of excessive duties, issued on customs Form 5269, dated March 20, 1945. None of these documents show the date of liquidation. Counsel for plaintiff concedes that the entries were purportedly liquidated by the collector at some time during the years of 1945 and 1946.

The basis for the claim made by plaintiff with respect to the invalidity of the liquidations is the contention that the bulletin notices were never posted or placed in the customhouse at West Palm Beach, as required by the regulations in effect at that time, section 16.2 (d) of the Customs Regulations of 1943, as amended. It claims that the notices of liquidation were placed on a clip board and laid on desks or file cabinets during the years these entries were allegedly liquidated and, therefore, were not posted in conformity with the regulations, and cites the case of Mary G. Hutchinson, infra, wherein the court, relying on the common meaning of their term, held that placing bulletin notices in folders on tables did not constitute posting.

Plaintiff states that the collector at West Palm Beach, Fla., was requested to repost the liquidations in accordance with section 16.2 (d), supra, but that he declined to do so and notified plaintiff of his decision to this effect on February 4, 1955. The protests were then filed with the collector within the 60-day period after the refusal.

At the trial, counsel for the defendant moved that the protests be dismissed on the ground that "they are untimely, filed more than 60 days after liquidation."

Plaintiff concedes that the protests are untimely but only because of prematurity and maintains they should be dismissed by this court for that reason on a finding that the liquidations of the involved entries were incomplete, as did the courts in Standard Oil Co. of Louisiana v. United States, 33 C. C. P. A. (Customs) 152, C. A. D. 329, and Mary G. Hutchinson v. United States, 18 Cust. Ct. 64, C. D. 1046, and that the collector should be instructed to complete his liquidations in accordance with the pertinent regulations, in order that protests against the liquidations might be filed within the period of 60 days thereafter, as prescribed by 19 U. S. C., section 1514 (Tariff Act of 1930, section 514). This section provides inter alia that, in the absence of protest or fraud, the decisions of the collector with

regard to certain matters specified therein shall be final upon all persons within 60 days after liquidation.

We have no quarrel with the contention of plaintiff that a notice of liquidation not given in conformity with the pertinent statutes and regulations is invalid. In a growing number of decisions, the courts have held that the notice of liquidation, in order to constitute legal notice, must be given by the collector in the form and manner prescribed by the Secretary of the Treasury under the authority of section 505, Tariff Act of 1930 (19 U. S. C., § 1505), and that the regulations promulgated thereunder have the force and effect of law. *United States* v. *Astra Bentwood Furniture Co.*, 28 C. C. P. A. (Customs) 205, C. A. D. 147; *Standard Oil Co. of Louisiana* v. *United States, supra*. Under these decisions, it is clear that plaintiff is entitled to notice that conforms to the requirements of the pertinent regulatory and statutory provisions and may demand that the collector give notice in accordance therewith.

In the aforementioned cases and others where plaintiff has presented satisfactory proof that the notice of liquidation was not properly given, the courts have required the collector to re-notice the liquidation in the form and manner required by law. *Lorraine Fibre Mills, Inc.* v. *United States*, 38 Cust. Ct. 94, C. D. 1848; *Mary G. Hutchinson* v. *United States*, 18 Cust. Ct. 64, C. D. 1046; *M. Dublin* v. *United States*, 2 Cust. Ct. 14, C. D. 77; *M. S. & J. A. Workman, Inc.* v. *United States*, 4 Cust. Ct. 295, C. D. 346; *Alex. D. Shaw* v. *United States*, 47 Treas. Dec. 969, Abstract 48900.

The portion of section 16.2 (*d*) of the Customs Regulations of 1943, with which plaintiff contends the collector at West Palm Beach failed to comply when he liquidated the entries, provided as follows:

. . . The bulletin notice of liquidation shall be posted as soon as possible in a conspicuous place in the customhouse for the information of importers and shall be dated with the date of posting. . . .

In an effort to establish its claim of improper posting, plaintiff presented in evidence the testimony of four witnesses. The first was Robert E. Lund, identified as a customhouse broker with the West Palm Beach Terminal Co., who served in the capacity of customs clerk with that company from 1943 through 1946. This witness testified at some length. He stated that he had been familiar with the methods employed by the customs officers at the port of West Palm Beach to give notices of the liquidation of entries since 1943; that, in 1945 and 1946, the bulletin notices of liquidation were fastened to a clip board and placed on top of a desk or file cabinet; that he had never had any trouble in locating them; but that he did not recall seeing a notice directing importers to the place where the bulletin notices could be found. He testified that the bulletin notices were

later posted by affixing the clip boards containing them to a bulletin board. However, on cross-examination and redirect examination, he displayed uncertainty about when the practice of placing the clip boards on the desks or file cabinets was discontinued and the method of affixing them to the bulletin board started, a fact of vital importance to the plaintiff's case.

On cross-examination, he admitted that the current bulletin board method of posting "might possibly have gone back to '46" but not to "'45," although he had stated on direct examination that, during the years of 1945 and 1946, a different method was followed. During redirect examination, Mr. Lund expressed a desire not to be "pinned down to dates particularly" and, in an apparent effort to be as accurate as possible under the circumstances, preferred to base his recollection of the posting methods employed at a given time on an association with personnel. Using this recall device, he averred that the clip board containing the liquidation notices was placed on file cabinets "when Mr. Joseph Alexander, now Deputy Collector of Customs at Port Everglades, Florida, was handling entries at his entry desk." On re-cross-examination, the witness stated that this method was discontinued after Mr. Alexander was moved from West Palm Beach and the practice of posting on the bulletin board instituted. When asked if the change in posting occurred immediately after Mr. Alexander's departure, he stated, "I didn't say, because I didn't know, sir." And, again, in response to substantially the same inquiry on redirect examination, the witness answered, "I don't know exactly when it was moved." In a further effort to pinpoint the time when the bulletin board was first employed as a posting medium at the port in this case, Mr. Lund related its use to the period when Elizabeth Morseman was serving as cashier, but, in that connection, said "I can't say in what period of her employment it was done; I can't recall that close."

It is obvious that the recollection of this witness, understandably dimmed by the passage of time, was not clear enough to enable him to place the different posting practices within a framework of definite and specific dates, and he frankly admitted his inability to do so. Nor can such a framework be erected from the witness' association of method with personnel. The record shows that the date of Mr. Alexander's departure from West Palm Beach was July 5, 1944. No dates are given with relation to Miss Morseman's period of service. The only evidence which in any way tends to indicate the time of Elizabeth Morseman's tenure as cashier is the presence of her signature on consumption entries forming part of plaintiff's collective exhibits 1 and 2, and bearing various dates in 1943 and 1944. It was established that she signed these documents in the capacity of cashier. The entries, however, were offered for another purpose and are not to be

considered in this connection. Clearly, there is nothing in the evidence relating posting practices at West Palm Beach to personnel from which a sound conclusion can be reached as to the system in effect in 1945 and 1946.

The only additional evidence in the record bearing on the question of the manner of posting is to be found in the testimony of plaintiff's witness, Mr. King, an attorney at law specializing in customs with the firm of lawyers representing the plaintiff. He testified that he was told on June 19, 1951, by the deputy collector of customs at West Palm Beach, whom he identified by description but not by name, that, in 1945, 1946, and up until 1948, the bulletin notices of liquidation had been laid on a counter or a desk and were not hung on a wall, and that, prior to 1948, there had been no sign to direct importers to the place where the liquidation bulletins could be found. Counsel for defendant objected vigorously to the admission of this evidence on the ground that it was hearsay and, therefore, incompetent; and that no foundation had been laid to show that the declarant knew or had reason to know what system of posting was in effect at the time of the liquidation of the involved entries. We feel that counsel's objection was well taken. Evidence is said to be hearsay "when its probative force depends, in whole or in part, on the competency and credibility of some person other than the witness by whom it is sought to produce it.". (31 C. J. S. evidence, section 192.) The testimony offered by Mr. King falls squarely within this definition. Subject to certain exceptions, the testimony of a witness as to what some other person told him will not be received by the courts as evidence of the existence of the fact asserted. (31 C. J. S. evidence, section 193.) The same rules of evidence apply in this court as in courts of general jurisdiction. Therefore, hearsay evidence that does not come within the statutory or common-law exceptions to the hearsay rule will not be admitted over objection. *W. T. Grant Company* v. *United States*, 38 C. C. P. A. (Customs) 57, C. A. D. 440, and cases cited therein. In our opinion, the evidence under consideration is not admissible under any of the exceptions, common law or statutory.

Apparently, plaintiff would have us believe that the declarant was the deputy collector of customs at West Palm Beach during 1945 and 1946, who died prior to the time of the trial. This fact was not established and to reach such a conclusion on the state of the record, we would have to indulge in not one but several presumptions. Even if we should conclude that the declarant and the deceased collector were one and the same person, the evidence would still be incompetent under the principle that declarations objectionable as hearsay will not be rendered competent by reason of the death of the declarant, unless otherwise provided by statute. This rule was cited with approval

and followed by the Court of Customs and Patent Appeals in *Sylvania Industrial Corp.* v. *United States*, 22 C. C. P. A. (Customs) 230, T. D. 47144. In that case, the court found no merit in the contention that hearsay evidence in the form of a letter to the collector was admissible merely because the writer was dead, and reversed the decision of the lower court on the ground that reversible error had been committed in admitting and giving probative effect to the document. We are aware that hearsay evidence is sometimes admitted where the declarant is unavailable because of death and the fact asserted cannot be proved otherwise than by his declaration. This relaxation of the hearsay rule is based on a necessity not present in the instant case.

Even where admitted, it is said that testimony as to the oral statements of deceased persons is the weakest kind of evidence and, though entitled to such weight as it deserves, should be subjected to the closest scrutiny. This is particularly true where the alleged statement, as here, was made in the presence of the witness alone. (31 C. J. S. evidence, sections 265, 266, and cases cited.) Nor should the high character of the witness be permitted to form an exception to the rule. *Foscue* v. *Mitchell*, 182 So. 740, 190 La. 758. Therefore, even if it be assumed arguendo that the hearsay evidence here offered should have been admitted on the basis of death of declarant, it is our opinion that it would be entitled to little weight under all of the circumstances.

It was brought out, during the course of the trial, that two locations, consisting of a room in the Post Office Building and a building in Riviera Beach, some 10 miles north of the Post Office Building, were assigned to the Customs Service at West Palm Beach for its use by the General Services Administration and that the bulletin notices of entries liquidated were available for inspection by importers at the latter location during 1945 and 1946. Plaintiff contends that the customhouse was located in the Post Office Building, and, since the notices of liquidation were not there posted, the provision of the regulation requiring posting in the customhouse was violated.

In an attempt to prove this contention with regard to the location of the customhouse, plaintiff summoned as a witness, Mr. John F. Budd, editor and publisher of the Customhouse Guide, who described the format of the publication and stated that the information relating to the individual ports was submitted to three sources for revision; that one of these sources was the collector or deputy collector of each port. From the material so revised, the port information in the Customhouse Guide was compiled. There were then offered and received in evidence, over the objection of the defendant's counsel that they were incompetent and irrelevant, photostatic copies of the frontispiece and the page dealing with the port of West Palm Beach

from the 1945 edition of the above publication as plaintiff's collective exhibit 3 and the corresponding pages from the 1946 and 1956 editions as plaintiff's collective exhibits 4 and 5, respectively. Exhibits 3 and 4 show the address of the United States Customs Service in West Palm Beach as the Federal Building, Corner Fern and Olive Streets, rooms 212–218, and the name of the deputy collector as Mr. E. C. Faircloth. Collective exhibit 5 indicates that the address of the United States Customs Service in 1956 was Port Road, Riviera Beach, Fla. Plaintiff urged that these exhibits were at least admissible as an admission against interest, since the Government sources to whom the material contained therein was sent for revision made no objection to the address as stated and, therefore, tacitly admitted its correctness. We agree with trial counsel for defendant that, under the circumstances of the instant case, the location of the customhouse cannot be established by an address in a private publication or by the failure of the collector or other Government employee to make corrections in material submitted to it by the publisher. Making such revisions is no part of their official duties.

The witness, Mr. Lund, testified that both the room in the Post Office Building and the Riviera Beach building were known to him as the customhouse, although, as to the latter, he stated that "We referred to it more or less as the dock office, but it was where all shippers' export declarations and where all entries were accepted and passed." Mr. George W. Boggs, an outside inspector of customs at West Palm Beach from 1944 to 1951, and a witness for plaintiff, testified that the space in the Post Office Building was used mainly for storage during the years 1944 through 1946, and, in response to the inquiry, "What did you call it?" stated, "We didn't call it anything."

At the third hearing of the case, held in West Palm Beach, counsel for the Government offered to stipulate and, on acceptance, did stipulate that, *prior to and after* the alleged liquidations herein, there was a room located in the Post Office Building at West Palm Beach that was designated as the customs office; that, *prior* to the entries and liquidations herein, a building in Riviera Beach, some 10 miles north of the Post Office Building, was also occupied by the customs officials; and that, from time to time, and at and prior to the alleged posting of the notices of liquidation of which plaintiff complains, notices such as the one offered in evidence were posted on the door of the room in the Post Office Building, designated as the customs office and on the bulletin board in the lobby of the Post Office Building. The copy of the notice referred to was received in evidence and marked as defendant's exhibit A. *Under date of December 4, 1951*, the notice stated that "Customs business generally, . . . are handled at the

U. S. Customs Dock Office, Port of Palm Beach, Riviera Beach, Fla." [Emphasis supplied.] We do not feel that this stipulation between the parties litigant is of material aid in resolving the question of the location of the customhouse at the time of the liquidation of the entries involved.

In the brief filed on behalf of plaintiff, it is urged that the building in which the bulletin notices were placed for examination was not included within the limits of the customs port of entry of West Palm Beach until June 20, 1954, and, therefore, could not have been more than a dock office or a customs station, as defined in section 1.2 of the Customs Regulations of 1943. Said section provides in part as follows:

**1.2 Customs stations; requirements for transaction of customs business at places other than ports of entry.**—(a) Places, other than ports of entry, at which customs officers or employees are stationed under the authority contained in article IX of the President's message referred to in section 1.1 to enter and clear vessels, accept entries of merchandise, collect duties, and enforce the various provisions of the customs and navigation laws shall be known as customs stations.

In the Encyclopaedia Britannica, volume 6, page 904, the term "customhouse" is defined thus:

The house or office appointed by a Government where the taxes are collected upon the importation and exportation of commodities, where bounties or drawbacks receivable upon exportation are paid, where free goods imported or exported are declared, and where vessels are entered and cleared.

Since the record contains nothing to show which of the two involved locations, if either, was officially designated as the customhouse, we think it appropriate, in the light of the above definition, to apply the test of usage in reaching a determination as to the place to be so designated for the purpose of this decision. Mr. Boggs, the customs inspector, testified that the space in the Post Office Building was used mainly for storage at the time these entries were allegedly liquidated, and this was not refuted. There is no showing that any customs business was conducted there in 1945 and 1946. Mr. Lund testified that all shippers' export declarations and all entries were accepted and passed in the building at Riviera Beach. It was admitted that the bulletin notices of liquidation were posted in said building. If, as it appears, the customs officials were stationed in that building, the customs business of the port transacted there, and there was no other place shown to have been officially designated as the customhouse, then, the building at Riviera Beach during the years in question was the customhouse, within the meaning of section 16.2 (d) of the Customs Regulations of 1943, and the posting of the notices of liquidation therein was proper.

In view of the whole record in this case, we are constrained to dismiss plaintiff's protest for two reasons:

First, we feel that the redress which it seeks to obtain should have been sought within what was a reasonable length of time under all of the circumstances. *Raphael Weill & Co.* v. *United States*, 21 C. C. P. A. (Customs) 152, T. D. 46479; *Dunlop Bros. & Hague & Co.* v. *United States*, 4 Ct. Cust. Appls. 231, T. D. 33475; *United States* v. *Chas. J. Webb Sons Co. (Inc.)*, 16 Ct. Cust. Appls. 156, T. D. 42790. It is undisputed that plaintiff waited periods of 9 and 10 years before protesting the liquidations. During those years, the official papers bearing the exact date of liquidation and containing other pertinent information were destroyed. The recollection of the witness, Mr. Lund, was affected by the great lapse of time, as is evidenced by the quoted portions of his testimony.

Despite the fact that, during the trial, counsel for defendant complained of this long delay by calling to the attention of the court the disadvantage under which it had been placed by the passage of time, no reason was given by plaintiff for its failure to proceed with its cause in an expeditious manner. The fact that supplemental duties were demanded and paid by plaintiff on the involved entries, though not sufficient to warrant a holding of actual notice, should have been a forceful reminder that the entries in the instant case had probably been liquidated and should have led it to institute an investigation and file the complaint herein long before it did. An examination of the cases in which this court and the appellate court have ordered the collector to repost the bulletin notice of liquidation fails to reveal a single case in which there was such a long delay in protesting the action of the collector.

Our second reason for concluding that plaintiff should not succeed in this action is our belief that it has not supported its claim of improper posting by substantial, competent, and convincing evidence. We have demonstrated the unreliability and inconclusiveness of the testimony of Mr. Lund, the only witness who professed to have personal knowledge of the method used to inform importers of the liquidation of entries at the port involved here. The testimony of Mr. King was hearsay and inadmissible. But, even if admissible, it was, in our opinion, not entitled to sufficient weight to prove the issue in question and support a decision.

The Court of Customs and Patent Appeals in the case of *United States* v. *Henry W. Peabody*, 40 C. C. P. A. (Customs) 59, C. A. D. 498, stated, "It is axiomatic, of course, that a public official is presumed to discharge his duties in accordance with the law and regulations governing his employment. Here, in order to rebut that presumption, it is incumbent upon the importer to prove by competent evidence that such presumption is erroneous." This the plaintiff

has not done, and the presumption that the posting of the notices of liquidation was properly performed must prevail.

Since the instant protests were not filed within the statutory period of 60 days after the involved liquidations, they are not timely. The defendant's motion to dismiss for untimeliness is granted.

Judgment will be rendered accordingly.