55 CCPA

The UNITED STATES, Appellant,

v.

CAJO TRADING, INC., Appellee.

Customs Appeal No. 5263.

United States Court of Customs
and Patent Appeals.

Feb. 15, 1968.

Barefoot Sanders, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, New York City, for the United States.

James R. Sharp, Washington, D. C. (Sharp, Solter & Hutchison, Washington, D. C., of counsel), for appellee.

\* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND and KIRKPATRICK,\* Judges.

WORLEY, Chief Judge.

The Government alleges reversible error in the judgment of the Customs Court, First Division,[1] which held that liquidation of certain spring clothespins assessed at a duty of 20 cents per gross under paragraph 412 of the Tariff Act of 1930, as prescribed by Presidential proclamation No. 3211, 72 Stat., part 2, ch. 14, T.D. 54493, was defective; that the protest respecting the entry was premature; and that it was the duty of the collector to make a valid liquidation of the entry in accordance with law.

On December 7, 1957, Presidential proclamation No. 3211 suspended previously granted Trade Agreement concessions on spring clothespins, classified under paragraph 412 and dutiable at 10 cent per gross according to the Trade Agreement, and restored the pre-Trade Agreement duty of 20 cents per gross. The instant clothespins were entered December 27, 1957, and liquidated March 13, 1958. Subsequently, the Presidential proclamation was declared void by the Customs Court in Falcon Sales Company et al. v. United States, 47 Cust.Ct. 129, C.D. 2292 (1961), appeal dismissed on Government motion, 49 CCPA 139 (1962). There the court held that the President had exceeded the authority delegated to him by Congress in restoring the pre-Trade Agreement rate rather than following the required course of either accepting or rejecting the Tariff Commission recommendation to place a quota on clothespin importations.

In January 1963, the importer here requested the collector to liquidate the subject entry at a duty of 10 cents per gross on the grounds that the 1958 "liquidation" was void in view of Falcon Sales. The collector refused on the ground that the liquidation of March 13,

1. Cajo Trading, Inc. v. United States, 56 Cust.Ct. 143, C.D. 2621 (1966).

1958, not having been protested within the time provided by Section 514,[2] had become "final and conclusive on all persons." That ruling was reversed by the Customs Court, holding that United States v. C. O. Mason, Inc., 51 CCPA 107, C.A.D. 844, certiorari denied, 379 U.S. 999, 85 S.Ct. 718, 13 L.Ed.2d 701, was *stare decisis* of the present appeal. The correctness of that holding is the issue before us.

*Mason* involved coffee imported into Puerto Rico from 1957 through 1959[3] and liquidated between 1957 and 1959, the protests being filed in 1960, all beyond the 60 day period provided in Section 514. The ground for the protests in *Mason* was the holding of the Customs Court in Pan American Standard Brands, Inc. v. United States, 43 Cust. Ct. 122, C.D. 2115, decided September 15, 1959. There the court held unconstitutional as an unlawful delegation of legislative power a provision of Act No. 95 of the Legislature of Puerto Rico.

In *Mason* this court unanimously agreed with the Customs Court that

> * * * the provision of Act No. 95 under which the liquidations were made, having been found unconstitutional, was not a law; that it was inoperative and afforded no basis for the alleged liquidations and subsequent protests; that its invalidity dates from the time of enactment; and that although in some situations, where a statute is declared to be unconstitutional, there may be questions of vested rights and of public policy which cannot be erased by a new judicial determination, no such factors have been presented in the cases at bar. * * *

Here the importer urges that the instant liquidation is equally void as in *Mason;* that the Customs Court correctly held the protest premature; and that it is the duty of the collector to make a valid liquidation of the present entry in accordance with law. The Government, on the other hand, urges that *Mason* is not applicable, and that the protest should be dismissed for untimeliness since the importer failed to act within the 60 days set by Section 514.

In evaluating the instant record and arguments, the Customs Court stated that it was "unanimously of the opinion that it can suggest no rational distinction, between the situation in *Mason* and the one at bar, sufficient to justify not following it," adding that

> If a liquidation based on an unconstitutional statute is void, one founded on an unauthorized Presidential proclamation appears equally so. * *

We find no error in that reasoning or conclusion. The Government urges, however, that the authority in support of "the voidness doctrine" enunciated in *Mason* "clearly restricts its application to unconstitutional statutes." It further contends:

> * * * There is not before this Court any question of an unconstitutional statute or executive action. In the *Falcon* decision, the Customs Court adverted solely to the powers regularly conferred upon the President by a statute of unquestioned constitutional validity. Even if the Supreme Court's expression does establish the "total voidness" of a statute found to be constitutionally unsound, and we submit that this Court did not so intimate in the *Mason* decision, it

---

2. Section 514 provides that a liquidation, reliquidation, decision of the collector, or his refusal to reliquidate an entry for clerical error shall be final and conclusive upon all persons unless the importer, consignee, or agent *"shall, within sixty days after, but not before such liquidation,* reliquidation, decision, or refusal, as the case may be, * * * file a protest in writing with the collector * * *."* (Emphasis supplied.)

3. Assessed under Section 319 of the Tariff Act of 1930 and an Act of July 11, 1935, of the Legislature of Puerto Rico, as amended by a resolution of the Secretary of Agriculture and Commerce of Puerto Rico, approved by the Governor of the Commonwealth of Puerto Rico April 18, 1957, under authority of Act No. 77, approved May 5, 1931, as amended by Act No. 95 of June 21, 1955.

does not declare than an executive action, incapable of affecting rights and obligations automatically, infects all other executive acts, however remotely connected with it, with "total voidness," alike as to those who timely challenge it and to those who neglect to do so. The executive act before the Court is not the issuance by the President of the proclamation restoring the higher rate of duty on spring clothespins, but the act of the Collector in effecting a liquidation of the specific entry here in issue, an act undertaken under statutory authority (i. e., section 505 of the Tariff Act of 1930), which is beyond challenge here, and which in fact defines not only the Collector's authority but his obligation.

It is true that Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886), the authority principally relied on in *Mason,* relates to an unconstitutional legislative act which was held void on the premise that "[a]n unconstitutional act is not a law" and is "as inoperative as though it had never been passed." We have reviewed *Mason* in light of the Government's arguments here but remain convinced of its soundness. There, as here, Section 514 was involved as reflected by the following:

> * * * we think that a liquidation based on an *unconstitutional* provision of a *statute* is not a final legal liquidation to start the running of the statute of limitations within the purview of section 514.

> *     *     *     *     *     *

What, then, is the proper case which *Congress intended will stay the 60-day requirement?* * * * (Emphasis supplied.)

Presumably a literal interpretation of Section 514 in *Mason* to ascertain Congressional intent would have required an opposite result. Here, too a literal interpretation of that section would remove *Mason* as *stare decisis* of the instant appeal, but there is nothing in this record which justifies a different interpretation. While it may well be that

there is a material difference between the collector's action here and his action under a *constitutional* statute or a *vaild* Presidential proclamation, that question is not before us. What we do say here is that we have the same difficulty as did the Customs Court in finding a valid distinction between an unconstitutional statute on the one hand, and an invalid Presidential proclamation on the other— the effect is the same in both cases. With due regard to the Government's arguments, we do not think it can fairly be said that Congress intended Section 514 to control in either instance.

The judgment is affirmed.

Affirmed.

RICH, Judge (concurring), with whom SMITH, Judge, joins.

I am unable to agree with the majority's opinion. The majority, like the Customs Court, boxes itself in by the force of what it considers an inexorable logic and holds it is bound by the decision in United States v. C. O. Mason, Inc., 51 CCPA 107, C.A.D. 844, to find here that the protest was "premature" because the liquidation was "defective." Preliminary to further discussion, the facts should be made clear.

This "premature protest" here under review was filed April 5, 1963, to a so-called "decision" of the collector dated February 12, 1963, i. e., within 52 days. The collector *liquidated* the entry of the imported spring clothespins five years before that, on March 13, 1958, at 20¢ per gross. *No protest has ever been filed against this liquidation.* Section 514 of the Tariff Act of 1930, then as now, requires protests to be filed within 60 days of liquidation. That statute provides that in the absence of protest within 60 days, a liquidation shall "be final and conclusive upon all persons (including the United States and any officer thereof) * * *."

October 18, 1961, the United States Customs Court handed down a decision in Falcon Sales Co. v. United States, 47 Cust.Ct. 129, C.D. 2292, appeal dismissed on motion of the Government-appellant,

49 CCPA 139. That case also involved an importation of spring clothespins. Duty was assessed at 20¢ a gross under authority of a Presidential proclamation, No. 3211, which had suspended for an indefinite period the 10¢ rate in effect under the Annecy Protocol to Gatt, subsequent to a finding of the Tariff Commission that the 10¢ rate was adversely affecting the domestic industry and a recommendation for an annual absolute *quota* on spring clothespins. The Customs Court found, in accord with the plaintiff's contentions, that the President's suspension of the 10¢ duty, when the Tariff Commission had recommended imposition of a quota, exceeded his authority, that his action was therefore void, and therefore that the 10¢ per gross duty in effect when the President attempted, without proper authorization, to change it, was the proper duty. There was no issue in that case regarding the timeliness of the protest. The protest was sustained.

The action of the importer which is herein being treated by the collector as a "protest" is a letter of appellee's attorneys of February 12, 1963, a year and a half after the *Falcon* decision, asking the collector *to liquidate* the importation of clothespins. It was and is appellee's theory that the entry had *never been* liquidated because the liquidation in 1958, at 20¢ a gross, was made pursuant to a Presidential proclamation which was "void" because in excess of statutory authority, as held in *Falcon*, and, says appellee, "a void act is an act which has never been done; it doesn't exist at all." It will thus be seen that we are in the realm of highly abstruse legal theory according to which liquidation is requested —not reliquidation—on the ground that an actual 1958 liquidation, being contrary to "law," is non-existent. If this legal theory can be made to stick, then appellee contends it is not in default under the statute which says anyone wishing to protest a liquidation must do so within 60 days because, according to the theory, there has not yet been a liquidation.

In passing on the soundness of this legal theory as applied to the facts of this case, it should be emphasized that the sole issue is whether this case may proceed on the basis that appellee is not barred by its failure to file a timely protest, under section 514.[1] The question of the validity of the Presidential

---

1. I use the expression "this case may proceed" advisedly. By it I mean that the question is whether appellee can compel the Government to "liquidate" on the theory it has not done so; that after such a second de facto liquidation it may then file normal protests thereto under section 514 and obtain an adjudication thereon, should it desire to do so.

The case is in this posture because the so-called "protest" before us is not a protest in the usual sense of a protest to a liquidation. It is merely an appeal from the collector's refusal of appellee's demand for a new liquidation based on a theory that the old liquidation is a nullity.

The status of this so-called protest is somewhat enigmatic. It has been "dismissed" by the judgment of the Customs Court. Normally, this would make the protesting party the loser. But here it is the winner and the government, against whom the protest was filed, is the appellant in this court. As it pointed out in a motion below for rehearing, the judgment does not conform to the lower court's opinion.

The "protest" here, filed April 3, 1963, to a refusal to liquidate dated February 12, 1963, was within 60 days. Yet the judgment of the Customs Court, read in the light of its opinion, dismisses the protest as premature, at the same time ruling in its opinion, but not in its judgment, that the collector still has the duty to make a valid liquidation. That liquidation would, if it conforms to the *Falcon* decision, be based on a duty of 10¢ per gross and appellee would get what it seeks and would, presumably, not file a protest. It would get the 10¢ duty *without ever having protested the 20¢ duty* originally charged. The latter determination of duty by the collector, by whatever name it is called, would never have become "final and conclusive" against anybody, as section 514 provides.

In *Falcon* the importer filed a *timely* protest and had it *sustained*, getting its duty reduced from 20¢ to 10¢. Now the appellee, *having itself failed to take*

proclamation is not in issue as it was in *Falcon*. Invalidity is assumed.

In dealing with the issue of whether the so-called protest in this case (i. e., the letter requesting liquidation) came too late, so that it must be dismissed on that ground, or whether it comes too soon so that it must be dismissed as "premature," the lower court opinion is unusual in that it first reports the unanimous view of the court and then goes on to state the individual views of the author. The unanimous view of the court was reported by him to be that it could "suggest no rational distinction" from its prior decision, affirmed by us in 1964 in United States v. C. O. Mason, Inc., supra. In that case we held (51 CCPA p. 113):

> \* \* \* we think that a liquidation based on an *unconstitutional* provision of a *statute* is not a final legal liquidation to start the running of the statute of limitations within the purview of section 514.
>
> \* \* \* \* \* \*
>
> What, then, is the proper case which Congress intended will stay the 60-day requirement? It seems to us that a liquidation based on an *unconstitutional* provision of a *statute* would certainly involve such a case since an *unconstitutional* provision of a *statute* is void *ab initio*. [Emphasis added.]

That is all we held since that was the only question we considered. Here we have a different question. The constitutionality of the statute here involved has not been qustioned. Here the President, acting as an administrative agent, purportedly under the statute, attempted to make a change in duty which he was not authorized by the statute to do. His only power was to accept or reject the recommended quota.

The author of the lower court opinion —and probably the whole First Division of the court—saw that there was a factual difference between this case and

*Mason*. Seeing it, he recognized that in applying the doctrine of *stare decisis* he was not applying it in the strict sense (for that which has *not* previously been decided is *not* controlled by the doctrine of *stare decisis)* but was applying it to a new situation and therefore making "another step forward, however short, for the concept of void liquidations." He had real misgivings about where such steps would lead. He said:

> By such easy stages, it could end up with complete or nearly complete occupation of the field of sections 514 and 515, Tariff Act of 1930, so that the provisions limiting valid protests to 60 days after liquidation would be largely superseded, and an importer could obtain the effect of a timely protest *no matter when he filed it.* [Emphasis added.]

When the effects of such step-by-step legal escalation are so clearly pointed out and the dangers so obvious, it behooves us to contemplate with care where "logic" and a supposed inability to make "rational" or "valid" distinctions leads. As Mr. Justice Holmes said in Hyde v. United States, 225 U.S. 347, 391, 32 S.Ct. 793, 811, 56 L.Ed. 1114 (1912),

> It is one of the misfortunes of the law that ideas become encysted in phrases and thereafter for a long time cease to provoke further analysis.

The phrase in which an idea is here about to be encysted is "liquidation 'as provided by law'," taken from our *Mason* opinion. We used that phrase in rationalizing the decision in a case involving an *unconstitutional statute.* We were discussing nothing else. We are now being asked to apply it to a different situation, not involving an unconstitutional statute. And the next thing we know—if we affirm here—we will be asked to apply it to cases in which collectors have classified goods in the wrong statutory class and appraisers have valued them according to the wrong section of the statute,

---

*such action,* hopes to accomplish, belatedly, a similar result on its legal theories, without filing any protest at all,

by demanding a new liquidation. Whether it can do this is the real problem before us.

or have assessed them at the wrong value. This is where simple "logic" leads and the absurdity into which we can lead ourselves by "inability" to see that different things are not the same. For it is indisputable that all such erroneous liquidations by collectors and valuations by appraisers are not "as provided by law." That was clearly foreseen by the author of the opinion below who seems to have been inviting us, as the court approving the *Mason* decision, to state whether we shall stop with *Mason,* extend it to the present facts, or let it go still another step or two. He said:

> The doctrine needs to be restated to limit it to the cases where the courts have already applied it and to give assurance that in other cases the *wishes of the Congress as expressed in sections 514 and 515 will continue to be respected.* [Emphasis added.]

The majority here, voicing "difficulty" in seeing a "valid distinction between an unconstitutional statute on the one hand, and an invalid Presidential Proclamation on the other," said it did "not think it can fairly be said that Congress intended Section 514 to control in either instance." We do not have the slightest indication of Congressional "intent" as to either situation but we do have the express mandate of Congress in section 514 that protests to actions of collectors which are displeasing to importers shall be filed within 60 days or they shall "be final and conclusive on all persons." That is what Congress intended. It is we who created an exception.

We have gone so far as to make a judicial (not Congressional) exception in the case of unconstitutional statutes. Now that it has been shown to us by the judge below and the Government brief where so-called "logical" extensions of that exception clearly lead, it behooves us to stop where we are and make no further exceptions, for we are on a collision course with express Congressional intent.

As Mr. Justice Holmes also said in the first paragraph of The Common Law, "The life of the law has not been logic: it has been experience. * * * The substance of the law at any given time pretty nearly corresponds, so far as it goes, with what is then understood to be convenient; * * *."

Appellee, at the trial level, saw the distinction between this case and *Mason,* which the majority has such apparent difficulty in assimilating. It realized *Mason* was a case of an unconstitutional statute and that this case is not. Its brief in this court, in an attempt to bring this case within *Mason,* is an heroic effort to make this case out to be one of an "unconstitutional" act by the President, underlying the collector's 1958 liquidation. It is also interesting to note that in the trial, where there was argument over a Government motion to set aside the notice of trial (which was denied), counsel for appellee repeatedly took the express position that this case involves a *different* issue from the *Mason* case. He was not then committing himself to the result in the *Mason* case, which was on appeal to this court and was not finally decided until a year later. He said:

> I am here to say it involves a different issue. Whether it is a distinguishable issue will be one for adjudication of this Court, and perhaps later, the Court of Customs and Patent Appeals.

Since our *Mason* decision turned out to be an affirmance, appellee now, of course, heavily relies on it and attempts to transmute the different issue into an indistinguishable issue in order to enable him to demand new liquidations nearly 5 years after liquidations have been made so that there will be no default under section 514. Congress *said* he should have acted within 60 days to obtain a review and I think it intended just that.

I agree with the majority that this case should be dismissed. I disagree with the majority's reasons. If appellee's protest were, in fact, against the liquidation of March 13, 1958, I would dismiss it as too late. The protest, however, was directed against the *refusal to liquidate* "evidenced by the letter * * * dated February 12, 1963." Protests of such refusals are not, in my opinion,

within the jurisdiction of the Customs Court. See 28 U.S.C. § 1583 (1964). I would therefore dismiss this case as without jurisdictional foundation.