**COMMONWEALTH OIL REFINING COMPANY, Inc., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**C.D. 4267;  Protest No. 68/55086–151.**

United States Customs Court.
Sept. 14, 1971.

Thacher, Proffitt, Prizer, Crawley & Wood, New York City (Robert S. Stitt and George W. Taliaferro, Jr., New York City, of counsel), for plaintiff.

L. Patrick Gray, III, Asst. Atty. Gen. (Glenn E. Harris, New York City, trial atty.), for defendant.

RAO, Chief Judge:

█ The merchandise involved in this case is described on the entry as "Unf. Virgin Naphtha derived from petroleum." Two lots were imported from Venezuela and entered at the port of Ponce, Puerto Rico on June 23, 1967. Both lots were entered under item 475.35, Tariff Schedules of the United States, as "Naphtha derived from petroleum" with a duty of 0.25 cent per gallon. On September 15, 1967, both lots were appraised and liquidated as entered.[1] Thereafter, on November 13, 1967, the entry was reliquidated and one lot was assessed with duty at 1.25 cents per gallon under item 475.25 of said Tariff Schedules, as motor fuel. The classification of the other lot was unchanged. According to the "Notice of Action Increase in Duties", the change was made because the merchandise in one lot had been found to have properties which conformed to the standards for motor fuel.

On May 29, 1968, more than 60 days after reliquidation, the plaintiff filed with the district director at Ponce, a protest claiming that the merchandise was in fact naphtha rather than motor fuel and was properly dutiable at 0.25 cent per gallon under item 475.35.

█ Although the protest was filed before the effective date of the Customs Courts Act of 1970 (84 Stat. 281), trial was not commenced by that date; therefore, it is deemed that a summons had been timely and properly filed and the procedures established by the said Act and the rules of this court presently in effect are applicable.

Accordingly, a complaint was filed in this court on October 13, 1970, setting forth the claim that the attempted reliquidation was null and void because notice was not given in accordance with section 505 of the Tariff Act of 1930 and section 16.2(d) of the Customs Regula-

tions, and that the original liquidation was final and conclusive.

At the trial, plaintiff claimed further that the attempt to reliquidate was invalid and void for failure to give notice of a change in an established and uniform practice as required by section 315(d) of the Tariff Act of 1930 and section 16.10 (a) of the Customs Regulations. At the close of the trial, the court granted plaintiff's motion that the pleadings be deemed to conform to the proof.

██ Pursuant to section 514 of the Tariff Act of 1930, effective as to this protest, a reliquidation becomes final and conclusive on all parties unless a protest is filed within 60 days thereafter. Since the protest herein was filed more than 60 days after reliquidation, it is untimely, unless it can be established that the reliquidation is incomplete or invalid. It is well settled that when a notice of liquidation has not been given in accordance with the requirements of section 505 of the Tariff Act of 1930 and the regulations issued thereunder, the liquidation is incomplete and the 60-day period for filing a protest does not commence to run until the required notice has been given. United States v. Astra Bentwood Furniture Co., 28 CCPA 205, C.A.D. 147 (1940). Protests filed more than 60 days after the date of a purported liquidation have been considered by the courts to the extent of determining whether the notice of liquidation complied with the statute and the regulations. Where the liquidation has been found incomplete for failure to give proper notice, the protest has been dismissed as premature and the collector directed to complete his liquidation in the form and manner provided by law. United States v. Astra Bentwood Furniture Co., *supra;* United States v. B. Holman, Inc., 29 CCPA 3, C.A.D. 164 (1941); Standard Oil Co. of Louisiana v. United States, 33 CCPA 152, C.A.D. 329 (1946). Where

---

1. Since no appeal for reappraisement has been filed by either party, the liquidation is not invalid because it occurred before the expiration of the time for such appeal. John V. Carr & Sons, Inc. v. United States, 66 Cust.Ct. ——, C.D. 4209, 326 F.Supp. 973 (1971).

the notice has been found to comply with the regulations, the protest has been dismissed for untimeliness, having been filed more than 60 days after a complete and final liquidation. United States v. Judson Sheldon Division, National Carloading Corp., 42 CCPA 202, C.A.D. 594 (1955); Henry A. Wess, Inc. v. United States, 54 CCPA 77, C.A.D. 910 (1967).

▉ As noted in the *Astra Bentwood* case, section 505 of the Tariff Act of 1930 mandatorily requires customs officials to give notice of liquidation "in the form and manner prescribed by the Secretary of the Treasury." Regulations so prescribed have the force and effect of law. It has been held that neither constructive notice by means of a "Notice of Duties Due" nor actual notice satisfy the requirements of the statute and the regulations. United States v. Astra Bentwood Furniture Co., *supra;* Mary G. Hutchinson v. United States, 18 Cust. Ct. 64, C.D. 1046 (1947); Norman G. Jensen, Inc. v. United States, 55 Cust.Ct. 336, C.D. 2599 (1965).

The complaint here lists a number of grounds for claiming that notice of re-liquidation was not given in accordance with the regulations, but only two of them are presently urged by plaintiff: (1) That no sign was maintained at the customhouse in Ponce stating that bulletin notices of liquidation were posted and where they could be found, and (2) that the bulletin notices were not posted or lodged in a conspicuous place or manner.

It is not disputed that during the period involved herein no notice or sign was maintained in the Ponce customhouse stating where the bulletin notices of liquidation could be found. The question is whether such a notice was required by the regulations.

Section 16.2(d) of the Customs Regulations provides:

16.2 *Procedure; notice of liquidation—*

\* \* \* \* \* \*

(d) \* \* \* The bulletin notice of liquidation shall be posted as soon as possible in a conspicuous place in the customhouse for the information of importers or lodged at some other suitable place in the customhouse in such a manner that it can readily be located and consulted by all interested persons, who shall be directed to that place by a notice maintained in a conspicuous place in the customhouse stating where notices of liquidations of entries are to be found. \* \* \*

Plaintiff claims that the requirement of a notice or sign in the customhouse stating where notices of liquidation are to be found applies whether the bulletin notices are *posted* in a *conspicuous* place or *lodged* in some other *suitable* place. Defendant maintains that it is required only in the latter case.

Plaintiff relies upon Norman G. Jensen, Inc. v. United States, *supra,* and British West Indies Company v. United States, 40 Cust.Ct. 285, C.D. 1995 (1958). In the *Norman G. Jensen* case, the court found that the bulletin notices were posted on a bulletin board suspended on a wall in a hallway behind a hinged glass door with no handle which could be opened only by the use of instruments of various sorts by persons interested in examining the notices. The court held that under such circumstances the notices were not readily accessible for inspection. It stated further (pp. 340–341):

\* \* \* Moreover, we must consider one of the other practices which were brought out in the evidence—the practice at Noyes of drawing or diverting the attention of the public to the location of the "customhouse" on one side of the common hallway in the Federal building and through and beyond the portals off the hallways over which was placed the sign "U.S. Customs," while at the same time utilizing a bulletin board located in the hallway *outside* of the area deemed to be the "customhouse" for the posting of such important customs business as bulletin notices of liquidation. And this, without there having been posted *within* the "customhouse" a notice drawing the attention of the public to the fact that

bulletin notices of liquidation were posted on the bulletin board in the hallway. Such a practice would unquestionably operate to produce confusion in the public mind as to what constituted the area for the transaction of customs business, including such business as the examination of bulletin notices of liquidation. [Emphasis quoted.]

This decision, therefore, does not stand for the proposition that failure to maintain a sign, standing alone, would invalidate an otherwise proper posting. In the British West Indies case, the applicable regulations did not provide for a sign and the court did not pass upon the point raised here.

Prior to 1948 the Customs Regulations provided:

* * * The bulletin notice of liquidation shall be posted as soon as possible in a conspicuous place in the customhouse for the information of importers and shall be dated with the date of posting. * * *

By amendment approved August 30, 1948, there was added the provision now in the regulations permitting lodging of the notice

at some other suitable place in the customhouse in such a manner that it can readily be located and consulted by all interested persons, who shall be directed to that place by a notice maintained in a conspicuous place in the customhouse stating where notice of liquidations of entries are to be found. [83 Treas.Dec. 377, T.D. 52026 (1948).]

The new provision may have been inserted because of the holding in Mary G. Hutchinson v. United States, *supra* (1947), that placing bulletin notices in a folder on top of a counter in the collector's office is not posting in a conspicuous place in the customhouse.

■ It would appear, therefore, that the requirement of a sign was intended to apply where the bulletin notices were lodged in a suitable place in the customhouse and not where they were posted in a conspicuous place therein. If the notices themselves are posted in a conspicuous place in the customhouse, there would seem to be no need for another notice or sign in some other conspicuous place in the customhouse.

The absence of such a sign does not constitute noncompliance with the regulations, provided the notices of liquidation themselves are posted in a conspicuous place in the customhouse.

■ The next question is whether the notice of reliquidation here was posted in a conspicuous place in the customhouse at Ponce.

According to the record, at the time involved herein, bulletin notices of liquidation were posted in the hall or reception area outside the cashier's office on the second floor of the Ponce customhouse. Three windows opened on the area from the cashier's office at the right as one entered the area. A counter was in front of the windows which were separated from each other by columns protruding onto the counter. The bulletin notices were kept in a clipboard hung from a nail driven into the support frame of the righthand side of the last window from the entrance of the area. Defendant's witness Alberto A. Pico, formerly supervisory customs inspector and assistant district director at Ponce, testified that the clipboard could be seen by a person who had mounted the stairs and walked into the area. From that position, however, he could not tell what the clipboard contained. There was no sign calling attention to it or stating what it contained. There was uncontradicted evidence that the clipboard was removed only to insert other notices and that notices were left in the clipboard for about a year.

The bulletin notice involved herein was placed in the clipboard on November 13, 1967 at about 8:30 in the morning. There is no evidence that plaintiff's employees were unaware of where the notices were posted or that anyone else had difficulty in finding them. Mr. Pico testified:

* * * we took care to tell them when we first initially had that clip-

board placed on the bulletin of liquidating entries. The number of individuals in the Port of Ponce, importers and brokers, were so few, you could personally tell this kind of instruction because there were no more than two or three brokers working there, but as far as the case in question, we told the people from Commonwealth that they would be posted there since we initiated the system.

It is not disputed that in the instant case plaintiff had actual notice of the reliquidation.

While there is considerable evidence in the record as to subsequent changes in the place and manner of posting the bulletin notices of liquidation, the question here is whether the above-described posting complied with the regulations.

In Standard Oil Co. of Louisiana v. United States, *supra,* it appeared that in order to inspect a notice of liquidation in the customhouse at Baton Rouge, it was necessary to lean over a safe in a stooped position in a small alcove and attempt to check the entries by holding up the list with one hand while using the other to pick out the entries being searched for. In that case, appellant's representative did not find the notice he was looking for because it was inserted between a partly filled top sheet and a pile of other previously liquidated notices. There was no notation on the top sheet to indicate that it was one of a series, rather it was signed at the bottom, indicating, according to previous practice, that the entries listed were the only ones liquidated on that day. Under these circumstances the court held that the bulletin notice was not posted in a conspicuous place in the customhouse for the information of importers but was posted there in a manner which was not only obscure but also misleading.

In British West Indies Company v. United States, *supra,* bulletin notices were placed on a clipboard which was attached to a wire netting at a height of 64 inches from the floor. This netting was fastened to a counter near the door of the then entry room and formed a cage which extended 2 feet over the counter. The clipboard was at times removed from its hanging position so that importers or their representatives could copy information from the notices. There was nothing to show that the importer was misled or confused by the manner of posting. It was held, therefore, that the bulletin notice was posted in a conspicuous place in the customhouse within the meaning of the regulations and constituted a proper and valid notice.

In Henry A. Wess, Inc. v. United States, *supra,* it was stated that section 16.2(d) does not guarantee convenience, but only availability and accessibility in the examination of bulletin notices.

In the instant case the bulletin notices were placed in a clipboard which was posted in the reception area outside the cashier's office on the second floor of the customhouse. It may be that the clipboard could not be seen or could be seen only partially as one entered the reception area from the stairway because of the protruding column. However, the photographs indicate that it would be visible if one walked into the area. The notices were readily accessible for examination. It was not necessary to stoop over an obstacle or pry loose a glass door or enter a small alcove to find them. It is true that one would have to go up to the clipboard to find out what was on it, as there was no sign in large letters giving that information. There is no requirement therefor in the regulations nor have the parties cited nor the court found any cases in which it has been held a prerequisite to proper posting. The notice requirements are for the benefit of importers and other interested persons who presumably have some knowledge of what they are looking for. A different situation is involved where a notice or warning is given to the general public in which case the location and size of the sign might have to be such that "he who runs may read." The notices here were readily accessible for examination and would be visible to a prudent importer or other interested person exercising a reasonable amount of diligence.

I conclude that the notice of reliquidation involved herein was properly posted in a conspicuous place in the customhouse in accordance with the regulations.

In the case incorporated herein, and recently decided, Commonwealth Oil Refining Company, Inc. v. United States, 67 Cust.Ct. ——, C.D. 4248 (1971), this court held that notices of liquidation posted in the customhouse in Ponce in much the same manner as the notices herein complied with the regulations. Protests filed more than 60 days thereafter were dismissed as untimely.

In the instant case, plaintiff has made an additional claim to the effect that the reliquidation is illegal for failure to give notice of a change in an established and uniform practice resulting in a higher rate of duty in accordance with section 315(d) of the Tariff Act of 1930, as amended, and section 16.10(a) of the Customs Regulations. These sections provide:

Sec. 315.  *Effective date of rates of duty*

\* \* \* \* \* \*

(d) No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties.

16.10 *Change in classification or value; higher or lower rate; effective date.*—(a) If there is an established and uniform practice at the various ports, a change in classification resulting in a higher rate of duty, except as the result of a court decision, shall be made only upon the Bureau's instructions and shall be applicable only to merchandise entered for consumption after the expiration of 90 days after the date of publication of the Bureau's instructions in the Treasury Decisions. \* \* \*

Before reaching the merits of plaintiff's additional claim, it must be determined whether it may be raised by a protest filed more than 60 days after reliquidation, said reliquidation having been made, as heretofore determined, in compliance with all procedural requirements.

The general rule is that the legality of a liquidation may be challenged only by protest filed within the 60-day period.  Gallagher & Ascher v. United States, 21 CCPA 313, T.D. 46832 (1933); Wood & Selick, Inc. v. United States, 24 CCPA 355, T.D. 48804 (1937); Spatola Wines, Inc. v. United States, 32 Cust.Ct. 181, C.D. 1601 (1954); Continental Distilling Corporation v. United States, 37 Cust.Ct. 163, C.D. 1817 (1956). An exception has been made where the liquidation is based on a provision of a statute subsequently declared unconstitutional or under a Presidential proclamation later declared void.  United States v. C. O. Mason, Inc., etc., 51 CCPA 107, C.A.D. 844 (1964), cert. den. 379 U.S. 999, 85 S.Ct. 718, 13 L.Ed.2d 701 (1965); United States v. Cajo Trading, Inc., 403 F.2d 268, 55 CCPA 61, C.A.D. 934 (1968).

In the *Mason* case the court held that an unconstitutional provision of a statute is void *ab initio;* that a liquidation made thereunder is not made "as provided by law"; and that the liquidation is not such a final liquidation as to start the running of the 60-day period.  The same result was reached in the *Cajo Trading* case on the ground that if a liquidation based on an unconstitutional statute is void, one founded on an unauthorized Presidential proclamation is equally so. These cases stand for the proposition that where the underlying authority for a liquidation is an unconstitutional statute or an invalid Presidential proclamation, the liquidation is void.  In these cases the protests were held pre-

mature and the collector directed to make a legal liquidation.

In the instant case, the claim of illegality is based on the contention that the district director failed to follow a long-continued administrative practice of classifying merchandise such as that involved here as naphtha and that customs officials failed to give notice of a change in an established and uniform practice. Assuming, but not deciding, that this were so, the district director's action is a decision as to the rate and amount of duties chargeable. It does not derive its authority from an unconstitutional statute or unauthorized Presidential proclamation, but from the Tariff Schedules of the United States. The question is whether the classification is in error because of a contrary established and uniform practice or because a notice of change of practice should have been issued. The district director's decision must have included findings that there was no contrary established and uniform practice and that no notice was required. All findings involved in a district director's action merge in the liquidation or reliquidation. United States v. B. Holman, Inc., *supra*, 29 CCPA at p. 14; Bob Stone Cordage Co., et al. v. United States, 51 CCPA 60, 66, C.A.D. 838 (1964). Therefore a contention of illegality must be raised by timely protest against the liquidation or reliquidation. Parrott & Co., et al. v. United States, 30 Cust.Ct. 133, C.D. 1511 (1953).

The court has found no cases involving the failure to follow an established and uniform practice or failure to issue a notice of change in practice in which it appears that the issue was raised by other than a timely protest. See, for example, United States v. H. Bayersdorfer & Co., 16 Ct.Cust.App. 43, T.D. 42717 (1928); Rapken & Co., Ltd. v. United States, 25 CCPA 268, T.D. 49393 (1938); Washington Handle Co. v. United States, 34 CCPA 80, C.A.D. 346 (1946); United States v. Electrolux Corporation, 46 CCPA 143, C.A.D. 718 (1959); Biddle Sawyer Corp. v. United States, 50 CCPA 85, C.A.D. 826 (1963). In B. R. Anderson & Co. v. United States, 47 Cust.Ct. 215, C.D. 2304, 201 F.Supp. 319 (1961), the timeliness of some of the protests was questioned, but it was not contended, nor did the court find, that because there was a claim that the classification was illegal and void by reason of a change in an established and uniform practice without notice, the protests need not be timely filed.

 There is a difference between failure to post a notice of liquidation in accordance with the regulations and a failure to give notice of a change in established and uniform practice. In the former case, the importer, not being notified of the liquidation itself, is denied the opportunity of filing a protest. In the latter case, he is in a position to file a timely protest against the claimed illegal act.

Timely protest not having been filed herein, the court does not have jurisdiction to consider substantive issues presented. This action is therefore dismissed. Judgment will be entered accordingly.